```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF TENNESSEE
                   WESTERN DIVISION
```
_____

| | |
|---|---|
| JULIAN T. BOLTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  No. 05-2315 Ma/P |
| | ) |
| JOHN MORGAN and MARK PROCTOR, | ) |
| | ) |
|     Defendants. | ) |
| | ) |

_____

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**
_____

The complaint in this action alleges inducement of breach of contract and intentional interference with a business relationship. Before the court is Defendants John Morgan ("Morgan") and Mark Proctor's ("Proctor") motion to dismiss, filed on July 25, 2005. Plaintiff Julian T. Bolton ("Bolton") filed a response on August 25, 2005. Morgan and Proctor replied on September 2, 2005. For the following reasons, Morgan and Proctor's motion is GRANTED.

**I. Background**

The following allegations are taken from Bolton's complaint. Bolton entered into an agreement ("the letter agreement") with Johnnie L. Cochran, Jr. ("Cochran"), Samuel A. Cherry, Jr. ("Cherry"), J. Keith Givens ("Givens"), and Jock M. Smith ("Smith") to become a limited partner in a Tennessee limited

liability partnership, Cochran, Cherry, Givens & Smith-TN, LLP. (Compl. ¶¶ 5-6,[1] Ex. 1.) Bolton also assumed the position of managing partner of the Memphis office of The Cochran Firm, beginning sometime in 2001. (Id. ¶¶ 6-7, Ex. 1.)

Without Bolton's knowledge, Cochran, Cherry, Givens & Smith, P.C. ("the national firm"), entered into an agreement ("the operating agreement"), effective January 2, 2002, with Levin, Papantonio, Thomas, Mitchell, Echsner & Proctor, P.A., and John P. Morgan, P.A.("the Florida firms"), whose presidents are Proctor and Morgan, respectively. (Id. ¶ 10, Ex. 2.) This was an operating agreement for Cochran, Cherry, Givens, Smith & Bolton, P.C., also known as The Cochran Firm—Memphis. (Id. Ex. 2 at 1.) In September 2002, without Bolton's knowledge, The Cochran Firm—FLA-TN, LLP, was registered as a limited liability partnership with the Secretary of State of Florida. (Id. ¶ 11.) The operating agreement and the establishment of an LLP in Florida "had the effect of transferring all of the assets of" the Tennessee LLP to the national firm and the Florida firms. (Id. ¶ 12.)

Bolton alleges that, in May 2004, Morgan and Proctor told the Memphis office administrator that Bolton was no longer managing partner and, therefore, should no longer receive a

---

[1] On page 2 of Bolton's complaint, two paragraphs are numbered six. To avoid confusion, the court will refer to the second paragraph six as paragraph seven.

2

percentage of the gross revenues from the Memphis office. (Id. ¶ 14.) Bolton further alleges that Morgan and Proctor "established a mechanism so that cases could be 'siphoned' from the Memphis office or would bypass the Memphis office," to avoid giving Bolton a percentage of the gross revenue from those cases. (Id. ¶ 15.) On April 29, 2005, Bolton filed this action against Morgan and Proctor, alleging claims for inducement of breach of contract and intentional interference with a business relationship.

**II. Jurisdiction and Choice of Law**

Bolton is a resident citizen of Tennessee. Morgan and Proctor are resident citizens of Florida. Because the amount in controversy exceeds $75,000, the court has diversity jurisdiction under 28 U.S.C. § 1332.

As a diversity action, the substantive law governing this case is state rather than federal law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). A federal district court is required to apply the "choice of law" rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Cole v. Mileti, 133 F.3d 433, 437 (6th Cir. 1998). "Otherwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side." Klaxon, 313 U.S. at 496. Therefore, this court must apply the Tennessee rule to determine which jurisdiction's law to apply. In tort cases, the Tennessee rule is the "most significant relationship" approach set forth in the

3

Restatement (Second) of Conflict of Laws. <u>Hataway v. McKinley</u>, 830 S.W.2d 53, 59 (Tenn. 1992).

> Contacts to be taken into account...to determine the law applicable to an issue include:
>> (a) the place where the injury occurred,
>> (b) the place where the conduct causing the injury occurred,
>> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

<u>Id.</u> (quoting Restatement (Second) of Conflict of Laws § 145(2)).

Although some of the relevant conduct in this case occurred in Florida, the primary focus of the case is the Memphis office of The Cochran Firm. That office is where the relationship between the parties is centered as well as the place where Bolton's injury occurred. Therefore, the court will apply Tennessee substantive law in this case.

**III. Standard for Dismissal Under Rule 12(b)(6)**

"Under the liberal notice pleading rules, a complaint need only put a party on notice of the claim being asserted against it to satisfy the federal rule requirement of stating a claim upon which relief can be granted." <u>Memphis, Tenn. Area Local, Am. Postal Workers' Union, AFL-CIO v. City of Memphis</u>, 361 F.3d 898, 902 (6th Cir. 2004). When considering a motion to dismiss for

4

failure to state a claim, the court regards all factual allegations in the complaint as true. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Further, the court must construe the complaint in the light most favorable to the plaintiffs." Memphis, Tenn. Area Local, Am. Postal Workers' Union, 361 F.3d at 902. If the plaintiff can prove no set of facts that would entitle him to relief based on a viable legal theory, the claim will be dismissed. Scheid, 859 F.2d at 437.

"The Federal Rules of Civil Procedure do not require a claimant to set out in detail all the facts upon which he bases his claim." Conley v. Gibson, 355 U.S. 41, 47 (1957). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003).

**IV. Analysis**

    **A. Inducement of Breach of Contract**

In Tennessee, the tort of inducement of breach of contract is recognized under both statutory and common law, but the elements are the same for both forms of the action, with the sole difference being the recoverable damages. Givens v. Mullikin, 75 S.W.3d 383, 405 (Tenn. 2002). Bolton brings his claim for inducement of breach of contract under Tennessee statutory law. A

5

plaintiff must plead and prove seven elements to recover on a claim for inducement of breach of contract: (1) a legal contract existed; (2) defendant was aware of the contract; (3) defendant intended to induce a contractual breach; (4) defendant acted with malice; (5) the contract was breached; (6) the breach was a proximate result of defendant's conduct; and (7) plaintiff was injured by the breach. Id.

Morgan and Proctor assert that Bolton's claim should be dismissed because no legal contract existed between Bolton and the partners in the Tennessee LLP. Bolton, however, argues that the letter agreement is a binding contract to form and establish a limited partnership. In response, Morgan and Proctor assert that the letter agreement is merely an unenforceable agreement to agree.

Under Tennessee law, a letter of intent may be treated as a binding contract in certain circumstances. See Gurley v. King, 2005 WL 1996672 (Tenn. Ct. App. Aug. 18, 2005) ("[M]erely because the document signed by the parties was expressly designated to be a "letter of intent" does not preclude it from constituting a valid contract."); APCO Amusement Co. v. Wilkins Family Rests., 673 S.W.2d 523 (Tenn. Ct. App. 1984) (finding letter of intent to be binding contract, given conduct of parties and wording of letter).

> In determining whether or not the letter should be construed as a binding contract, we must keep in mind

6

> that "[t]he primary test as to the actual character of a contract is the intention of the parties, to be gathered from the whole scope and effect of the language used, and mere verbal formulas, if inconsistent with the real intention, are to be disregarded. It does not matter by what name the parties chose to designate it. But the existence of a contract, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined in case of doubt not alone from the words used, but also the situation, acts, and the conduct of the parties, and the attendant circumstances."

Gurley, 2005 WL 1996672 (quoting 17 Am. Jur. 2d Contracts § 1 (1964)). Therefore, the court will look to the language of the letter itself and the conduct of the parties to determine to whether the letter agreement is an enforceable contract.

The letter agreement explicitly states that it "is binding pending final preparation and approval of more formal documents setting out the terms of the Operating Agreement and any amendments to the LLP." (Compl. Ex. 1 at 3.) The Operating Agreement to which this statement refers is not the operating agreement between the national firm and the Florida firms, but an agreement that was apparently never drafted that would have set out "[t]he duties, responsibilities and limitations of the responsibilities associated with the title of Managing Partner." (Id. at 1 ¶ 4.) There is no indication that any action was ever taken to amend the partnership agreement to make Bolton a limited partner in the Tennessee LLP[2] although almost three years passed

---

[2] In an order issued in a related case, Bolton v. Cochran, Cherry, Givens, & Smith, TN-LLP, No. 04-2632, this court found that the statutory requirements to make Bolton a limited partner in the firm were never fulfilled

before Bolton was allegedly forced out of The Cochran Firm.

In <u>Barnes & Robinson Co. v. OneSource Facility Servs., Inc.</u>, the Tennessee Court of Appeals found that two letters of intent that repeatedly discussed the drafting of a more definitive agreement did not create a binding agreement between the parties when no more definitive agreement was ever drafted. 2006 WL 163218, at *3 (Tenn. Ct. App. Jan. 23, 2006). Similarly, in this case, although the letter agreement sets forth many of the terms of the relationship between Bolton and The Cochran Firm, it repeatedly refers to the drafting of more formal documents, which will more definitively define the partnership relationship.

According to Bolton's complaint, however, Bolton assumed the position of "managing partner" of the Memphis office of The Cochran Firm sometime in 2001 and continued in that position until May 2004.[3] Bolton's allegations also indicate that The Cochran Firm paid him in accordance with the terms of the letter

---

and, therefore, that he was not a partner despite evidence that he was held out to the public as such. (Order Denying Plaintiff's Motion to Remand and Denying Plaintiff's Motion to Schedule an Evidentiary Hearing as to Whether Diversity Jurisdiction Exists 15, d.e. 21, Jan. 27, 2005.)

[3] The court notes, but does not consider, that Bolton may not actually have been managing partner. It is not clear to the court that the letter agreement became effective before the operating agreement. The letter agreement is dated August 3, 2001, and Bolton alleges that he assumed the position of managing partner at the Memphis office of The Cochran Firm sometime in 2001. The only date provided for Bolton's signature on the letter agreement, however, is January 14, 2002, (Compl. Ex. 1 at 4), twelve days after the operating agreement went into effect on January 2, 2002. (Compl. Ex. 2 at 13.) According to the terms of the operating agreement, only Morgan, Proctor, Cherry, or Smith could serve as Managing Attorneys. (Id. at 2 ¶ 2.1(b).)

agreement from 2001 until April 2004. Specifically, the allegations indicate that Bolton was paid a five percent override on the gross revenues for the Memphis office as compensation for managing that office, although he does not allege that he was ever given the one percent equity interest in the Memphis office of The Cochran Firm that the letter agreement indicated he would receive as a limited partner. (Compl. 3-4 ¶ 13, Ex. 1.) "The sharing of profits of a business as compensation for personal services does not constitute a partnership." Powell v. Bundy, 272 S.W.2d 490, 492 (Tenn. Ct. App. 1954); see also H.T. Hackney Co. v. Robert E. Lee Hotel, 300 S.W. 1, 2 (Tenn. 1927) ("When profit sharing is accepted as a test [of the existence of a partnership], it is almost universally with the qualification that, if the profits are reserved as compensation for services or as payment of a debt, sharing them is not the test.").

Given the inaction of the partners at The Cochran Firm to formalize the partnership or to compensate Bolton as a partner, rather than merely for his services as a manager, the court finds that, as to Bolton's limited partnership with the firm, the letter agreement was an unenforceable agreement to agree. There can be no claim for inducement to breach an agreement to agree.

The conduct of the parties, however, indicates that the letter agreement operated as an enforceable contract of employment between Bolton and The Cochran Firm. Under Tennessee law, a contract of employment for an indefinite term is a

contract at will that can be terminated by either party at any time. Combs v. Standard Oil Co., 59 S.W.2d 525, 526 (Tenn. 1933); Rose v. Tipton County Pub. Works Dep't, 953 S.W.2d 690, 691 (Tenn. Ct. App. 1997); Graves v. Anchor Wire Corp. of Tenn., 692 S.W.2d 420, 422 (Tenn. Ct. App. 1985). Where there is no contractual right to continued employment, a plaintiff cannot recover on a claim for inducement of breach of contract. Forrester v. Stockstill, 869 S.W.2d 328, 330 (Tenn. 1994). Therefore, to determine whether Bolton has stated a claim for inducement of breach of contract, the court must determine whether the letter agreement was a contract for a definite or indefinite term.

　　　The letter agreement states that, after one year as "managing partner," there will be a review of Bolton's equity position in the firm, which he was never given, and of the never-drafted Operating Agreement. No other time period is mentioned, and more than one year had elapsed between the time Bolton began working at the Memphis office of The Cochran Firm and the time he was allegedly forced out. Therefore, when Bolton was allegedly forced out of his position in the Memphis office of The Cochran Firm, he was working at the firm under a contract for an indefinite term, which is a contract at will under Tennessee law. Morgan and Proctor's motion to dismiss is granted as to Bolton's claim for inducement of breach of contract.

**B. Intentional Interference with a Business Relationship**

Under Tennessee law, a plaintiff alleging intentional interference with a business relationship must plead and prove that: (1) a business relationship with specific third parties or a prospective relationship with an identifiable class of third persons existed; (2) defendant knew of that specific relationship; (3) defendant intended to cause the breach or termination of the relationship; (4) defendant had an improper motive or used improper means; and (5) plaintiff suffered damages from the tortious interference. Trau-Med of America, Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 701 (Tenn. 2002).

Morgan and Proctor assert that the court should dismiss the claim for interference with a business relationship because it is actually a claim for intentional interference with employment and Bolton's complaint does not set out sufficient facts to state a claim for intentional interference with employment. This argument, however, ignores the fact that the prospective business relationship at issue here was a partnership, not a mere employer-employee relationship.

Furthermore, if the prospective relationship between Bolton and the partners at the Tennessee LLP were merely an employer-employee relationship, Bolton could still bring a claim for intentional interference with a business relationship. In 2002, when the Tennessee Supreme Court expressly adopted the tort of

intentional interference with a business relationship, it noted that the tort included interference with "any prospective contractual relations, except those leading to contracts to marry, if the potential contract would be of pecuniary value to the plaintiff." Id. at 701 n.4. The court included "interferences with the prospect of obtaining employment" as an example. Id.

Nevertheless, the court finds that Bolton's complaint does not state a claim for intentional interference with a business relationship because it does not set out sufficient facts to show that Morgan and Proctor had an improper motive or used improper means. To show improper motive, a plaintiff must "demonstrate that the defendant's *predominant* purpose was to injure the plaintiff." Id. at 701 n.5 (emphasis added). Bolton has not pled the predicate for such a showing.

Furthermore, although the Tennessee Supreme Court did not precisely define "improper," because the determination is "dependent on the particular facts and circumstances of a given case," the court did provide examples of improper means:

> those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common law rules; violence, threats, or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship; and those methods that violate an established standard of a trade or profession, or otherwise involve unethical conduct, such as sharp dealing, overreaching, or unfair competition.

12

Id. (internal citations omitted). Given the court's finding that the letter agreement was at most a contract at will, none of the actions Morgan and Proctor allegedly took could be considered improper. Therefore, Bolton's complaint does not state a claim for intentional interference with a business relationship, and Morgan and Proctor's motion to dismiss that claim is granted.

**V. Conclusion**

Defendants John Morgan and Mark Proctor's motion to dismiss is GRANTED.

So ordered this 29th day of March 2006.

s/Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE